# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Paul Morphy, )<br>)<br>        Plaintiff, )<br>)<br>v. )<br>)<br>)<br>Willie Davis, *individually and/or in his* )<br>*official capacity as warden at Trenton* )<br>*Correctional Institution*; Gary Lane, )<br>*individually and/or in his official capacity* )<br>*as warden at Kershaw Correctional* )<br>*Institution*; and John Does 1-9, *individually* )<br>*and/or in their official capacities as* )<br>*employees of the South Carolina* )<br>*Department of Corrections*; and the )<br>South Carolina Department of Corrections, )<br>)<br>        Defendants. )<br>_____) | Civil Action No.: 1:20-cv-02788-JMC<br><br>**ORDER AND OPINION** |

    This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") filed on January 11, 2022. (ECF No. 32.) The Report recommends that the court grant Defendants' Motion for Summary Judgment (ECF No. 24) as to Plaintiff's federal claims, deny Plaintiff's Motion to Strike (ECF No. 25) without prejudice, and remand Plaintiff's remaining state law claims to state court. (ECF No. 32 at 2.)

    For the reasons stated below, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 32) and incorporates it herein, and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 24). Plaintiff's remaining state law claims are hereby **REMANDED** to the Court of Common Pleas of Lancaster Court, South Carolina, and his Motion to Strike Defendants' Answer (ECF No. 25) is **DENIED** without prejudice, with leave to re-file in the state court action.

1

I.     FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth the relevant facts and legal standards, which this court incorporates herein without a full recitation. (ECF No. 32 at 2-10.) As brief background, Plaintiff was previously incarcerated at various institutions within the South Carolina Department of Corrections ("SCDC"). (*Id*. at 2.) During his incarceration at Wateree River Correctional Institute, Plaintiff alleges he faced serious threats from gang members and was placed into protective custody. (*Id*.) When he was transferred to Trenton Correctional Institution ("TCI") on February 14, 2017, however, he was placed into general population, despite his classification at "SP2"[1] in the SCDC internal assignment system. (*Id*.) Plaintiff claims that he expressed his fear of remaining in general population to two prison officials, Major Canning and Sergeant Hartley, apprising them of various threats against his life. (*Id*. at 3.) Though Plaintiff did not communicate these concerns to Defendant Warden Davis directly, he claims that Hartley told him Warden Davis was aware of Plaintiff's concerns. (*Id*.) On April 21, 2017, Plaintiff was assaulted by several inmates in a bathroom at TCI. (*Id*. at 4.) An incident report indicates that Plaintiff was found "bleeding from the nose and mouth, two of his top teeth were pushed in, and he was complaining of pain from being hit in the back of his head." (*Id*.) Plaintiff was placed under protective custody and assessed by a nurse on April 23, 2017. (*Id*. at 5.) The nurse found "small" but "healing" lacerations on Plaintiff's face and noted a tooth "may have been knocked loose." (*Id*.) Plaintiff complained of pain in his neck and that he could "barely hold his head up." (*Id*.) Plaintiff was provided ibuprofen and x-rays of his neck were ordered. (*Id*.) Though he was seen again by a nurse the following day, Plaintiff filed a grievance indicating that he had "very bad pain inside

---

[1] Testimony from Defendant Warden Davis, TCI's warden at the time, affirmed that an "SP2" classification would bar an inmate's placement into general population according to SCDC's policies and procedures. (ECF No. 32 at 3.)

2

[his] head," and that medical staff had informed him he should be taken to the hospital. (*Id*.) He complained that he had not received appropriate care (such as an x-ray) and had yet to see a doctor. (*Id*.) Plaintiff's neck was finally x-rayed on April 26, 2017, and revealed mild degenerative cervical spondylosis but "no recent injury." (*Id*. at 6.)

Approximately two weeks later, Plaintiff was transferred to Kershaw Correctional Institution ("KCI"), where he remained until at least 2019. While there, he alleges he submitted several grievances complaining of "head problems," "blurred vision," and "great pain," stemming from his assault at TCI, and requesting to see a doctor. (*Id*. at 7 (citing grievances submitted on June 18, 2017, and July 3, 2017).) These grievances were returned for no "RTSM."[2] Plaintiff also alleges that he complained to Defendant Warden Lane of KCI directly on two occasions, where he referenced his lack of medical care following his assault at TCI and handed Warden Lane copies of his grievances. (*Id*. at 8.) Plaintiff was seen by a doctor over two years later, on September 16, 2019, who found tenderness, stiffness, and decreased range of motion in Plaintiff's neck, along with "mild progression" of his spondylosis since his x-ray on April 26, 2017. (*Id*. at 9-10.)

On April 17, 2020, Plaintiff filed his original Complaint in the Lancaster County Court of Common Pleas, raising 42 U.S.C. § 1983 claims for violations of his constitutional rights by Wardens Davis and Lane. (ECF No. 1.) Plaintiff then filed an Amended Complaint adding SCDC as a party and alleging negligence under the South Carolina Tort Claims Act ("SCTCA"). (ECF No. 1-1.) The parties conducted discovery over the next few months, though Plaintiff alleges that SCDC failed to adequately respond to Plaintiff's discovery requests and did not appear at a

---

[2] Within the SCDC, a "Request to Staff Member" ("RTSM") is a system to "facilitate communication between inmates and staff" and "serve as [the] inmate's attempt at an informal resolution pursuant to the grievance process/policy," "address non-grievable issues," and "cover basic complaints." S.C. Dep't of Corr., Pol'y GA-06.06, Request to Staff Member (2021), https://www.doc.sc.gov/policy/GA-06-04.htm.pdf.

3

deposition. (ECF No. 25 at 2.) In response, Plaintiff filed a motion for sanctions, asking the court to strike Defendant SCDC's Answer. (*Id*. at 2-3.)

The Magistrate Judge's Report suggests granting Defendants' Motion for Summary Judgment as to Plaintiff's § 1983 claims, and remand to state court for Plaintiff's remaining state law claims. (*Id*. at 1.) Considering Plaintiff's claims in turn, the Magistrate Judge found that Plaintiff's § 1983 claim for failure to protect against Warden Davis, stemming from his placement into general population, was time-barred, because it occurred more than three (3) years before the date Plaintiff filed his Complaint. (*Id*. at 12.) As to any claim arising from the consequent assault at TCI, the Magistrate Judge found Plaintiff had not presented sufficient evidence that Warden Davis personally knew of a substantial risk to Plaintiff's safety. (*Id*. at 13-14.)

As to Plaintiff's § 1983 claims for deliberate indifference to a serious medical need against Wardens Davis and Lane, the Magistrate Judge found that Plaintiff had not shown that either warden had any personal knowledge of or involvement in the denial of medical treatment to Plaintiff. (*Id*. at 16-20.) Because Plaintiff's federal claims could not survive summary judgment, the Magistrate Judge recommended that his state law claims under the SCTCA be remanded back to state court. (*Id*. at 21-23.) The parties were informed of their right to file objections to the Report within fourteen (14) days of its date of service. To date, neither party has objected to the Report.

## II. LEGAL STANDARD

### A. The Report and Recommendation

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews*

4

*v. Weber*, 423 U.S. 261, 270–71 (1976).  The responsibility to make a final determination remains with the court.  *Id.* at 271.  As such, the court is charged with making *de novo* determinations of those portions of the Report to which specific objections are made.  *See* 28 U.S.C. § 636(b)(1); *See also* Fed. R. Civ. P. 72(b)(3).  In the absence of specific objections to the Magistrate Judge's Report, the court is not required to give any explanation for adopting the Report.  *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).  Rather, "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).  Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

### B. Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party.  *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with

mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

### III.    ANALYSIS

#### A.    Failure to Protect Claim

As an initial matter, the court concludes that Plaintiff's claims arising from his alleged misclassification and placement into general population at TCI are not time-barred under the applicable statute of limitations. Claims brought under § 1983 are subject to the analogous state law statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 249-50, (1989) ("[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."). In South Carolina, personal injury actions have a statute of limitations of three years "after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action." S.C. Code Ann. § 15-3-535 (West 2022). This clock starts on the date of the injury, not the date of the alleged negligent act. *McAlhany v. Carter*, 781 S.E.2d 105, 112 (S. C. Ct. App. 2015), *aff'd,* No. 2016-000405, 2017 WL 4873655 (S.C. May 3, 2017) ("[A] personal injury cause of action cannot accrue until there is an injury."); *see also Dean v. Ruscon Corp.*, 468 S.E.2d 645, 647 (S.C. 1996).

Though the misclassification of Plaintiff's protected status apparently occurred on or before his transfer to TCI on February 14, 2017—more than three years before the date Plaintiff

6

filed this suit on April 17, 2020—Plaintiff was not actually injured until he was assaulted by fellow inmates in the TCI bathroom. Plaintiff could not have been "on notice" that a personal injury claim had accrued before he was actually injured. Up to that point, Plaintiff only faced a risk of injury due to his improper assignment to general population: he simply could not have brought suit alleging personal injury or constitutional injury until that risk actually materialized. *See also Hoffman v. Tuten*, 446 F. Supp. 2d 455, 459 (D.S.C. 2006) (holding, in a case involving a plaintiff who alleged exposure to hepatitis after a prison employee drew his blood with an unsanitary syringe, that the plaintiff's injury did not accrue until he was informed of his positive hepatitis test, and explaining that "*[t]he statute of limitations begins to run when Plaintiff knows or has reason to know of his injury*") (emphasis added).

Nonetheless, the court finds that Plaintiff has not put forth sufficient evidence that Warden Davis acted with deliberate indifference to Plaintiff's alleged serious risk of harm. The Magistrate Judge correctly stated that to satisfy the deliberate indifference standard, a § 1983 plaintiff must demonstrate that the prison official "kn[e]w of and disregard[ed] an objectively serious . . . risk of harm." (ECF No. 32 at 13 (quoting *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997)).) Plaintiff contends that his conversations with prison officials Canning and Hartley regarding serious threats against his wellbeing may support his claim that Warden Davis actually knew about these threats. Because Canning and Hartley may have told Warden Davis about the threats, Davis' personal knowledge thereof remains a disputed question of fact. Yet, Plaintiff concedes he has no direct evidence of Warden Davis' actual knowledge:

> Q:   Mr. Morphy, are you aware of any evidence that Warden Davis knew specifically about your housing situation where you contended that you should've been on protective custody.
> A:   No, sir.

7

(ECF No. 24-1 at 11.)  Plaintiff's only evidence of Warden Davis' actual knowledge of this communicated risk is a vague statement from Hartley that "Warden Davis was aware of what goes on within the institution."  (ECF No. 26-3 at 8.)  Even in the light most favorable to Plaintiff, this broad statement cannot alone sustain Plaintiff's allegation that Hartley relayed Plaintiff's *specific* concerns to Warden Davis.  A mere scintilla of evidence supporting Plaintiff's claim, as here, cannot propel him over the summary judgment threshold, especially where Warden Davis denies recalling any conversation concerning Plaintiff at all.  (ECF No. 24-4 at 3.)  Though other circumstantial evidence, such as a substantial and pervasive history of inmate attacks at KCI or lawsuits against Warden Davis could be used to prove he "must have known" about the alleged risks and therefore support Plaintiff's claim, Plaintiff has not put forth such facts here.  (ECF No. 32 at 15 (quoting *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015)).)  Because Plaintiff cannot make a threshold showing of deliberate indifference, his failure to protect claims against Warden Davis cannot survive summary judgment.

### B. Plaintiff's Remaining Claims

Plaintiff's § 1983 claims for deliberate indifference to his serious medical needs fail at this stage because Plaintiff does not put forth any facts pointing to Wardens Davis and Lane's personal involvement in his allegedly deficient medical care.  Instead, Plaintiff's accusations largely concern actions by medical staff at various prisons.  While Plaintiff does allege that he discussed his requests to see a doctor with Warden Lane at KCI and handed him copies of his grievances, nothing suggests Warden Lane knew of the seriousness of Plaintiff's injury, which arose from an assault at another institution, and Plaintiff's actual need (rather than stated desire) to see a doctor.

Moreover, the court declines to exercise pendent jurisdiction over Plaintiff's remaining

state law claims after the dismissal of his federal civil rights claims. Plaintiff agrees that remand is appropriate if the individual defendants are dismissed. The Magistrate Judge correctly noted that "a remand will generally be preferable to a dismissal when [,as here,] the statute of limitations on the plaintiff's state law claims has expired." (ECF No. 32 at 21 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351-52 (1988)).)

The court has carefully examined the findings of the Report and concludes summary judgment is proper. Noting that the parties did not object to the Report, and subject to the clarifications in this Order, the court discerns no clear error on the face of the record. Thus, after a thorough review of the record, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 32) and incorporates it herein, and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 24). Plaintiff's remaining state law claims are hereby **REMANDED** to the Court of Common Pleas of Lancaster County, South Carolina, and Plaintiff's Motion to Strike Defendants' Answer (ECF No. 25) is **DENIED** without prejudice, and with leave to re-file in the state court action.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

May 3, 2022
Columbia, South Carolina